IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DEBORAH H. SMITH,                )
                                 )
               Plaintiff,        )
                                 )
          v.                     )     1:14CV00861
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,                        )
                                 )
               Defendant.        )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Deborah H. Smith, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 13). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB and Supplemental Security Income, alleging a disability onset date of March 15, 2009. (Tr. 148-49.) Following denial of both applications initially (Tr. 60-70, 107-16, 130-33), Plaintiff unsuccessfully sought reconsideration of her DIB claim only (Tr. 71, 136, 117-29, 137-44). Plaintiff then requested

a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 145-46). Prior to the hearing, Plaintiff amended her alleged onset date to June 27, 2010, her fiftieth birthday. (Tr. 76.) Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 72-106.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 13-33.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 27, 2010, the amended onset date.
>
> 3. [Plaintiff] has the following severe impairments: disorders of the back, disorders of the neck (relatively mild cervical spondylosis), sciatica, carpal tunnel syndrome, insomnia, status post right thumb surgery, migraines and dorsal left foot pain.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform reduced light work . . . . [Plaintiff] can lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk for six hours in an eight-hour workday. She can occasionally

climb; climb ropes, ladders and scaffolds; balance; stoop; and crouch. She can frequently kneel and crawl. [Plaintiff] should avoid concentrated exposure to hazards. She can also engage in frequent fingering.

. . .

6. The [VE] testified [Plaintiff] is capable of performing past relevant work as a manager of food and concessions, which [the VE] described . . . as a light and skilled occupation with [a Specific Vocational Preparation] of six. I find this work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform.

7. [Plaintiff] has not been under a disability, as defined in the . . . Act, from June 27, 2010, through the date of this decision.

(Tr. 18-33 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI) . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant

7

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ erred in his evaluation of Plaintiff's impairments under the spinal listings" (Docket Entry 11 at 4); and

(2) "[t]he ALJ erred by finding that Plaintiff was capable of performing squatting/crouching in the RFC when both [consultative examiners] found she was incapable of squatting" (id. at 7).

Defendant contends otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 14 at 4-11.)

### 1. Listing 1.04A

In Plaintiff's first issue on review, she contends that the ALJ erred by finding that her lumbar impairments did not meet or equal the criteria of Listing 1.04A pertaining to spinal disorders, 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.04A. (Docket Entry 11 at 4-6.) In particular, Plaintiff asserts that the ALJ improperly required her to show an "inability [to] ambulate effectively" to meet Listing 1.04A, when that Listing does not require such inability. (Id. at 5 (citing Tr. 19).) Moreover, Plaintiff argues that "the ALJ erred by requiring that [Plaintiff's] radiographs characterize her nerve compression as more than mild in order to

---

on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

meet [Listing 1.04A]." (Id. (citing Newkirk v. Colvin, No. 7:12-CV-200-BO, 2013 WL 4828573, at *3 (E.D.N.C. Sept. 10, 2013) (unpublished), and Walker v. Astrue, Civ. No. 2:03-0078, 2008 WL 4722121, at *10 (M.D. Tenn. Oct. 21, 2008) (unpublished)).) Lastly, Plaintiff emphasizes the harmfulness of the ALJ's error, by noting that "medical records confirm she can make out a prima facie case" that her lumbar impairments meet all of the components of Listing 1.04A. (Id. at 6 (citing Tr. 247, 249, 250-55, 265, 273, 284-85, 288, 321, 322-24, 341, 343-45).) Plaintiff's arguments have merit.

Listing 1.04A requires proof of a "[d]isorder[] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" and:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. To show that her lumbar condition meets this Listing, Plaintiff must establish that her impairment "meet[s] *all* of the specified medical criteria" that relate to such Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

9

Here, the ALJ's entire analysis of whether Plaintiff's lumbar impairments met or equaled the criteria of Listing 1.04A consists of the following:

> As for [Plaintiff's] back impairment and sciatica, there is no evidence of record of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in inability to ambulate effectively. An MRI performed in July 2009 revealed no significant spinal stenosis. John Birkedal, M.D., reviewed [Plaintiff's] MRI in July 2009 and indicated only minor compression of [the] S1 nerve root.

(Tr. 19 (internal citations omitted).) The ALJ's above-quoted analysis contains several errors which require remand.

First, the ALJ should not have required Plaintiff to demonstrate an "inability to ambulate effectively" (Tr. 19), as Listing 1.04A does not include any such criteria, see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. The Commissioner argues that the ALJ's use of the phrase "resulting in inability to ambulate effectively" referred only to "lumbar spinal stenosis" which correlates to Listing 1.04C, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04C. (See Docket Entry 14 at 8 n.2.) However, later in the determination, the ALJ made clear he considered an "inability to ambulate effectively" a requirement of all three subsections of Listing 1.04 (A, B, and C): "<u>As with [Plaintiff's] back condition</u>, in determining whether [Plaintiff's] left foot condition meets a listing, <u>there must be evidence of an [in]ability to ambulate effectively</u>." (Tr. 19 (emphasis added).)

10

Second, the ALJ's finding that "there is <u>no</u> evidence of record of nerve root compression" directly conflicts with his acknowledgment, two sentences later, that Dr. Birkedal assessed "<u>only minor</u> compression of the S1 nerve root." (<u>Id.</u> (emphasis added).)

Third, the ALJ erred to the extent he suggested that "only minor compression" of a nerve root does not suffice to meet Listing 1.04A. (<u>Id.</u>) Listing 1.04A does not contain any requirement regarding the severity of the nerve root compression. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A; <u>see also</u> <u>Newkirk</u>, 2013 WL 4828573, at *2 ("While the ALJ relied on [the treating physician's] statement that plaintiff's MRI's failed to reveal any significant herniations or nerve root impingement in finding that plaintiff did not meet the Listing, significant nerve root impingement is not required. In point of fact, the record reveals that plaintiff was diagnosed with degenerative disc disease with evidence of nerve root compression as confirmed by MRI.") Further, another district court has cautioned against ALJs ascribing too much significance to the term "mild" as used to describe conditions on diagnostic reports:

> The ALJ next stated that because the plaintiff's medical conditions were described as "mild," they could not produce the consistently high or severe levels of pain alleged. It is not necessarily true that only severe impairments produce severe pain. While the word "mild" may describe a particular physical condition (i.e., a "mild" fracture), the same word as used in a technical, medical sense does not necessarily translate directly to

11

> a corresponding quantifiable level of pain. It is
> significant that this case involves, inter alia, a
> condition that relates to compression of or interference
> with spinal nerves. It is reasonable to infer that even
> a relatively "mild" compression of one's cervical nerves
> could reasonably be expected to produce severe or
> disabling pain. The medical or technical use of a term
> to interpret a condition seen on an x-ray or MRI should
> not be automatically assumed to apply as well to the
> level of pain that a condition can be expected to
> produce.

Walker, 2008 WL 4722121, at *10.

The ALJ's missteps in analyzing whether Plaintiff's lumbar impairment met or equaled a listing at step three do not constitute harmless error, because the record contains at least some medical evidence of all of the criteria of Listing 1.04A.[5] The record demonstrates that Plaintiff suffered from multi-level lumbar degenerative disc disease (Tr. 249 (MRI dated July 14, 2009), 341 (MRI dated November 15, 2011)), resulting in compression of the S1 nerve root (Tr. 253 (Dr. Birkedal's assessment dated July 23, 2009)). Moreover, the relevant medical records, covering the period from Plaintiff's amended onset date, June 27, 2010, to November 17, 2011, document neuro-anatomic distribution of her pain (Tr. 282-85, 286-87, 322-24, 342), limitation of motion of her

---

[5] The Commissioner argues that two consultative examiners did not find certain of the criteria required by Listing 1.04A during their examinations of Plaintiff in 2011 and, therefore, that Plaintiff could not have met or equaled Listing 1.04A. (See Docket Entry 14 at 8 (citing Tr. 285, 324).) However, "Listing 1.04A requires a claimant to show only what it requires him to show: that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." Radford v. Colvin, 734 F.3d 288, 294 (4th Cir. 2013). Thus, as Plaintiff argues, she "need not show positive signs at every doctor visit or that every sign is present at the same visit." (Docket Entry 15 at 1.)

12

spine (Tr. 285, 321), motor loss (Tr. 324, 345), subjective sensory loss (Tr. 322), and positive straight-leg raise tests (without specification if sitting or supine) (Tr. 284-85, 288, 324, 345). Although substantial evidence (cited above) exists to support a finding that Plaintiff's lumbar impairment met or equaled Listing 1.04A, the evidence does not compel such a finding, particularly given the subjective nature of the sensory loss and the ambiguity regarding the straight-leg tests.

In sum, the ALJ erred in his evaluation of whether Plaintiff's lumbar impairment met or equaled Listing 1.04A, and the Court should remand this matter for reevaluation of that Listing.

**2. Squatting/Crouching**

In her second and final assignment of error, Plaintiff maintains that the ALJ erred by finding in the RFC determination that Plaintiff could squat/crouch occasionally. (See Docket Entry 11 at 7 (citing Tr. 20).) Plaintiff emphasizes that the regulations define "occasional" as up to one-third of an eight-hour workday (or up to two and one half hours) (id. (citing Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – The Medical-Vocational Rules of Appendix 2, 1983 WL 31251 (1983), and 20 C.F.R. § 404.1567)), but that both consultative examiners (one of which the ALJ accorded "significant weight" (see Tr. 30-31)) noted that Plaintiff could not squat at

13

all (id. (citing Tr. 285, 324)).[6]  Plaintiff deems this error significant, because the ALJ found Plaintiff capable of "a reduced range of light work . . . and further restrictions could relegate her to sedentary exertion." (Id. (citing Tr. 20).)  Plaintiff argues that, if the ALJ limited her to sedentary work, given "her age, education and past relevant work, a finding of 'disabled' would be directed as of her [amended] onset date at age 50 under [Rule 201.14 of the Medical-Vocational Guidelines]." (Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14).)  Plaintiff's contentions do not warrant relief.

Substantial evidence supports the ALJ's determination that Plaintiff can crouch occasionally.  Although consultative examiner Dr. Stephen Burgess observed that Plaintiff could not crouch during his examination (see Tr. 285), the ALJ gave "significant weight" to Dr. Burgess' ultimate finding of only moderate impairment in Plaintiff's ability to crouch (Tr. 30, 285).  Further, the ALJ gave "significant weight" to the opinions of the state agency physicians (Tr. 28, 29), both of whom opined that Plaintiff retained the ability to crouch occasionally (see Tr. 112, 125).

Moreover, even assuming, arguendo, that the ALJ erred in not precluding all crouching in the RFC, any such error remains harmless under the circumstances of this case.  The ALJ found at

---

[6] Although both consultative examiners used the term "squat" to describe the ability to bend at the knees (Tr. 285, 324), the regulations adopt the word "crouch" to signify such bending, see, e.g., 20 C.F.R. § 404.1545(b), and thus this Recommendation will use "crouch."

14

step four of the SEP that Plaintiff could return to her past relevant work as a manager of food and concessions (see Tr. 31), and the Dictionary of Occupational Titles ("DOT") reflects that Plaintiff's prior job does not require any crouching, see G.P.O., DOT, No. 185.167-022 (Manager, Food Concession), 1991 WL 671293. Similarly, the ALJ alternatively found that Plaintiff retained the RFC to perform other jobs that exist in significant numbers in the national economy (namely, marker in retail and maid/building cleaner) (see Tr. 32-33), and the marker in retail job, as described by the DOT, does not require any crouching, see DOT, No. 209.587-034, 1991 WL 671802.  Because even preclusion of all crouching would not materially impact the outcome in this case, no reason exists for a remand based on the ALJ's finding that Plaintiff could occasionally crouch. See Morgan v. Barnhart, 142 F. App'x 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required.  This court will not vacate a judgment unless the substantial rights of a party have been affected.").

15

## III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed, and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include reevaluation of whether Plaintiff's lumbar impairment meets or equals Listing 1.04A. As a result, Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 10) should be granted to the extent it seeks remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied.

                                        /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                           **United States Magistrate Judge**

January 29, 2016